UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN THE MATTER OF THE
EXTRADITION OF
DAVID KENNETH DRUMM

Action No. 15-MJ-1104-DLC

ORDER ON DEFENDANT'S MOTION FOR RELEASE ON BAIL PENDING
EXTRADITION PROCEEDINGS (#21)

December 10, 2015

CABELL, U.S.M.J.

The defendant, David Kenneth Drumm (Mr. Drumm or "the defendant"), was the Chief Executive Officer of Anglo Irish Bank ("Anglo") from January 2005 until his resignation in December 2008, after which he relocated to the United States. Irish prosecutors allege that he (and others) fraudulently concealed the bank's true financial condition in the time leading up to the 2008 financial crisis, and in 2014 charged him with 33 criminal offenses. The government of Ireland subsequently requested the defendant's extradition and American law enforcement officials in due course arrested the defendant on October 10, 2015. The defendant seeks to be released on bail pending an extradition hearing presently scheduled for March, 2016. After careful consideration of all the evidence, including submissions by the parties and evidence adduced from a hearing held on November 13, 2015, the Court finds that the defendant has not established the presence of special circumstances sufficient to overcome the presumption in favor of detention in extradition cases. Accordingly, the motion for release on bail will be denied.

I.      **RELEVANT FACTS**

   A.  **Personal and Work History**

Anglo was one of the largest banks in Ireland before it was nationalized in 2009 and eventually merged into Irish Bank Resolution Corporation.  Mr. Drumm served as CEO of Anglo from January 2005 until his resignation in December 2008.

Mr. Drumm moved to the Boston area in 2009, following Anglo's collapse.  Mr. Drumm and his wife reside in an affluent Boston suburb with their children, an adult daughter, who is a college student, and a minor daughter, who is a high school student.  The Drumms have a large extended family, all of whom live in Ireland.  Despite these family ties, Mr. Drumm has not returned to Ireland in more than six years and has specifically declined requests to be interviewed by Irish authorities regarding the criminal investigation that led to this extradition matter.

At the time of his resignation from Anglo, Mr. Drumm owed the bank approximately 11 million dollars.  On October 14, 2010, Mr. Drumm attempted to discharge this and other debts by filing for bankruptcy in the United States.  The Bankruptcy Court denied his petition for discharge, finding, among other things, that Mr. Drumm had intentionally failed to disclose assets.  On November 20, 2015, the decision was affirmed on appeal.  *See In re David K. Drumm*, No. 15-CV-10184-LTS (D. Mass. Nov. 20, 2015) (Memorandum and Order on Bankruptcy Appeal).[1]

---

[1] Because the bankruptcy matter concerns allegations that the defendant intentionally failed to disclose the existence of certain substantial assets to investigators in order to mislead officials and obtain a discharge in bankruptcy from approximately $11 million in debt, the Bankruptcy Court decision and the recent decision affirming it on appeal unquestionably bear as a matter of common sense on the defendant's credibility with respect to what weight should be given to any assertions or offers he makes in support of his motion for bail.  That being said, the Court finds that it is unnecessary to consult those decisions for guidance where the instant record provides an ample basis to consider and resolve the motion for bail.

Mr. Drumm is currently employed as the chief investment officer of an asset management company. His employer has agreed to keep his job open pending resolution of these proceedings. Neither Mrs. Drumm nor the Drumm daughters are currently employed. The Drumms have a network of friends and colleagues in Massachusetts, several of whom have offered their homes as security should Mr. Drumm be released on bail.

### B. Criminal Proceedings

Ireland seeks to extradite the defendant based on conduct that allegedly occurred between late 2007 and mid-2008, and in response to the financial crisis developing at that time. Mr. Drumm is charged with fraudulently concealing Anglo's financial position through various acts, including failing to disclose certain transactions, providing financial assistance to a group of investors to induce them to purchase Anglo's stock, and using circular transactions to inflate the corporate deposits on Anglo's financial statements.

In February 2009, the Irish Financial Services Regulatory Authority filed a complaint with An Garda Síochána, Ireland's national police force, concerning a number of suspected malpractices within Anglo. Mr. Drumm was subsequently implicated in the course of the investigation. A number of Mr. Drumm's former Anglo subordinates have already been tried on charges similar to some of those that Mr. Drumm now faces, and those who were convicted were sentenced to perform community service. The Irish government maintains that its investigation of Mr. Drumm has been active and ongoing since 2009, but that it has been complicated by Mr. Drumm's decision to leave the country.

In July and August 2014, the Dublin Metropolitan District Court issued 33 warrants for Mr. Drumm's arrest for specific offenses based on the alleged fraudulent conduct. Mr. Drumm was arrested on October 10, 2015 on a complaint and warrant issued by this Court.

## II.    LEGAL STANDARD

Extraditions are not criminal matters and the familiar standards of the Bail Reform Act, 18 U.S.C. § 3141, do not govern. See *Kamrin v. United States*, 725 F.2d 1225, 1228 (9th Cir. 1984) (stating that there is a different standard for bail in extradition cases than in federal criminal cases); *In the Matter of the Extradition of Garcia*, 761 F. Supp. 2d 468, 470 (S.D. Tex. 2010) (noting that bail in extradition cases is governed by federal common law).  Instead, there is a presumption against bail and the burden is on the defendant to prove both: 1) that he is neither a flight risk, nor a danger to the community; and 2) that there are "special circumstances [that] justify release on bail." *U.S v. Castaneda-Castillo*, 739 F. Supp. 2d 49, 55 (D. Mass. 2010); *see also United States v. Kin-Hong*, 83 F.3d 523, 524 (1st Cir. 1996) (reversing district court's order granting release on conditions where defendant established he was not a flight risk but failed to otherwise show special circumstances justifying release); *Salerno v. United States*, 878 F.2d 317 (9th Cir. 1989) (denying motion for bail where defendant argued only that he was not a flight risk and did not make a showing of special circumstances); *Koskotas v. Roche*, 740 F. Supp. 904, 918 (D. Mass. 1990) (noting that lack of flight risk is not a special circumstance justifying bail).

The determination of what constitutes a "special circumstance" is within the Court's sound discretion, *see e.g., In re Extradition of Gonzalez*, 52 F. Supp. 2d 725, 736 (W.D. La. 1999), but it is generally understood that "special circumstances" have typically been limited to those "situations where 'the justification is pressing as well as plain,' ... or 'in the most pressing circumstances, and when the requirements of justice are absolutely peremptory.'" *United States v. Williams*, 611 F.2d 914, 915 (1st Cir. 1979) (citations omitted).  Accordingly, the analysis of bail requests in extradition cases is fact specific but the overarching theme is that bail is appropriate only where the defendant's circumstances are "extraordinary" and will subject the defendant to difficulties beyond those "applicable to all defendants facing extradition." *In the*

*Matter of Extradition of Nacif–Borge*, 829 F. Supp. 1210, 1216 (D. Nev. 1993) (citing *In the Matter of Extradition of Smyth*, 976 F.2d 1535, 1535-36 (9th Cir. 1992)).

**III.   ANALYSIS**

  **A. <u>Danger and Risk of Flight</u>**

Mr. Drumm has the burden of establishing in the first instance that his release would not pose a danger to the community or present a risk of flight. *Castaneda-Castillo*, 739 F. Supp.2d at 55. The government concedes that Mr. Drumm does not pose a danger to the community, and the Court agrees. The government argues, though, that the defendant poses a flight risk in light of his financial resources and past willingness to move his family back and forth between Ireland and the United States.[2] Mr. Drumm counters that he has no connections to any countries besides Ireland and the United States and that his appearance in this matter can be secured through a combination of conditions including home confinement, electronic monitoring, and a bond secured by his own real estate as well as the real estate of others.

The Court does find that the seriousness of the charges pending against the defendant in Ireland provides the defendant with an incentive to flee. The Court further finds that the defendant's background and experience in international matters and his presumed substantial assets provide him with the ability to flee if he were so inclined. That being said, the Court will assume without deciding the issue that it would be possible to fashion a set of conditions to adequately mitigate the risk of flight.

---

[2] Although it appears to be readily accepted that the defendant has considerable assets, it should be noted that no statement or report regarding the defendant's assets and resources or worth has ever formally been submitted to the Court for its consideration.

B. **Special Circumstances**

Turning then to the issue of special circumstances, Mr. Drumm argues that special circumstances exist in this case because: 1) there is no diplomatic necessity to deny him bail in this case where Ireland regularly grants bail to defendants facing charges similar to those Mr. Drumm faces; 2) Ireland has delayed in seeking Mr. Drumm's extradition, suggesting that it does not view his prosecution as a high priority matter; 3) the extradition proceeding is likely to be lengthy and last a number of years; 4) Mr. Drumm's family relies on him as its sole source of income; and 5) it will be difficult to consult with counsel while he is detained, particularly in light of what has been labeled the "BOP [Bureau of Prisons] Situation." The defendant further argues that even if each of these five circumstances alone is insufficient to constitute a special circumstance, they constitute a special circumstance when considered together. The Court accordingly addresses each of the grounds separately and then as a whole.

   1. *Diplomatic Necessity*

Mr. Drumm asserts that there is no compelling reason to detain him pending the extradition hearing where the offenses he is charged with are bailable offenses in Ireland, and where Ireland, moreover, regularly grants bail to defendants sought by the United States. In support of these claims, he submits affidavits from Irish legal experts averring that Ireland has a constitutional presumption in favor of bail, and that a person charged in Ireland with the same offenses he is charged with would be eligible to apply for bail. The defendant has also submitted evidence that some of his former Anglo subordinates were granted pretrial bail in Ireland on charges similar to some of those Mr. Drumm now faces. Based on these facts, he argues that, notwithstanding the normal presumption that defendants facing extradition from the United States should be detained, there is no diplomatic necessity to detain him in this case.

The Court does not find this argument compelling. Although some courts have held that the availability of bail in the country seeking extradition tends to show that there is no diplomatic need to hold a defendant, other courts have held that the availability of bail in that country is irrelevant. *See In re Gannon,* 27 F.2d 362, 362-63 (E.D. Pa. 1928) (no diplomatic necessity to hold respondent because of the availability of bail for the respondent's offense in the foreign country and the lengthy delay before his extradition hearing); *Nacif–Borge,* 829 F. Supp at 1221 (stating that lack of diplomatic necessity may also exist if the foreign nation offers bail for American citizens being extradited for the same offense); *but see In re Extradition of Siegmund*, 887 F. Supp. 1383, 1386 (D. Nev.1995) (stating that *Gannon* does not stand for the proposition that availability of bail is a "special circumstance"); *In re Extradition of Rouvier*, 839 F. Supp. 537 (N.D. Ill. 1993) (finding that availability of bail in the country seeking extradition was irrelevant and could not constitute a special circumstance).

Even assuming that the availability of bail in Ireland could be a special circumstance in some cases, Mr. Drumm has not established that it is a special circumstance in this case. For one, Mr. Drumm has shown only that similarly situated defendants would be eligible to apply for bail in Ireland, not that they would actually be granted bail. He alludes to two other Anglo defendants who were granted bail but these defendants are not similarly situated where they were Mr. Drumm's subordinates, were charged with fewer crimes, voluntarily cooperated with Irish authorities, and voluntarily surrendered in Ireland. Mr. Drumm also alludes to some seven United States citizens who were granted bail in Ireland in recent years but there is no basis to evaluate whether these cases are instructive because he has not provided any information about the crimes those individuals were charged with or whether bail was even contested. Regardless, in this case, Ireland (through the U.S. Attorney) has specifically asked that the defendant be

detained pending his return to Ireland, underscoring rather than undermining the diplomatic necessity for detention.  Mr. Drumm might indeed be released on bail in Ireland but that would be an issue for the Irish courts to decide.  For present purposes, a country's willingness to extend bail to defendants located within its borders does not lessen the same country's desire to have fugitive defendants held so that they may be promptly returned for trial.  *See e.g., Siegmund*, 887 F. Supp. at 1386 (because "concern in an international extradition case is not to mirror the internal bail practices of the requesting country, but, rather, to deliver the extraditee to that country if the conditions precedent to extradition, as set out in the treaty, are satisfied," it "misses the point" to argue that bail is available in the requesting country).

### 2. Delay in Seeking Extradition

Noting that the conduct underlying the criminal charges against him took place in 2008, Mr. Drumm argues that the Irish government has demonstrated a lack of urgency by waiting several years to charge him and seek his extradition.  Some courts have held that there is no diplomatic necessity to detain a defendant where the requesting nation has "not made prosecution of this offence a priority." *In the Matter of the Extradition of Chapman*, 459 F. Supp. 2d 1024, 1027 (D. Haw. 2006). *See also Castaneda-Castillo*, 739 F. Supp. at 58 (twenty-five year delay demonstrated that Peru did not consider the extradition of the defendant a priority).  But, not all delays in prosecution show a lack of diplomatic necessity.  "The normal passage of time inherent in the ligation process" does not constitute a special circumstance. *Kin-Hong*, 83 F.3d at 525.  In this case, it appears that Ireland has been actively investigating the case since 2009 and that the delay in charging Mr. Drumm was attributable, at least in part, to his own decision to relocate to the United States.  This is a far cry from *Castaneda-Castillo*, cited in Mr. Drumm's memorandum, which involved a 25-year delay before the filing of charges and an

additional three-year delay before seeking extradition.  *Castaneda-Castillo*, 739 F. Supp. at 58.  The Court thus does not find that the interval of time between the defendant's alleged conduct and Ireland's extradition request demonstrates a lack of urgency on Ireland's part in prosecuting this matter.

### 3. Length of the Extradition Proceedings

Mr. Drumm asserts that the extradition proceedings in this case involve extraordinarily complex financial matters and may take years to litigate to completion.  He argues that it would thus be "manifestly unjust" to detain him where the extradition proceedings might take longer to resolve than any term of incarceration he might receive if convicted and sentenced in Ireland.  The fact that an extradition hearing cannot be promptly held may constitute special circumstances, but that is provided the defendant is not the cause of the delay.  *In the Matter of Requested Extradition of Kirby*, 106 F.3d 855, 863 (9th Cir. 1997) (delay not solely attributable to relators was special circumstance).  *Compare Kin-Hong*, 83 F.3d at 525 (complexity of legal issues arising from reversion of Hong Kong to People's Republic of China not a special circumstance where extradition hearing was not unduly delayed).

This argument fails here, however, because there is no basis to fear it will take an inordinate amount of time to conduct the extradition hearing.  On the contrary, the extradition hearing has been scheduled (at the parties' request) for early March 2016, and the Court's inquiry at that hearing will be limited to a narrow set of issues: (1) whether a valid treaty exists; (2) whether the crime charged is covered by the relevant treaty; and (3) whether there is probable cause to believe that the defendant committed the crimes alleged by Ireland.  *Skaftouros v. United States*, 667 F.3d 144, 154–155 (2nd Cir. 2011); *Kin–Hong*, 110 F.3d at 110.  Accordingly, notwithstanding the quantity and complexity of the underlying criminal charges, it will not be necessary for the parties to litigate the underlying criminal charges or to engage in

extensive discovery to prepare for the extradition hearing.  To the extent the defendant's concern about lengthy proceedings encompasses concerns about potential post-extradition hearing litigation, such as appeals from any decisions this Court might render, that is too speculative a ground at this juncture to constitute a special circumstance justifying release.

### 4. *Dependents*

Mr. Drumm argues that his role as the sole source of income for his family is a special circumstance militating in favor of release.  Putting aside for the moment the fact that the defendant and his family ostensibly appear to have significant resources to draw upon, the Court is sympathetic that detention might cause some unwelcome financial strain.  But that possibility, however unfortunate, is present in almost every case where a defendant with family faces detention pending adjudication.  Accordingly, the fact that the defendant's family depends on him for financial and emotional support is not a special circumstance weighing in favor of release.  *United States v. Castaneda-Castillo*, 739 F. Supp. 2d at 57; *In the Matter of Extradition of Russell*, 805 F.2d 1215, 1217 (5th Cir. 1986) ("financial and emotional hardship [on family members is] present in almost all cases.").

### 5. *"BOP Situation"/Need to Consult with Counsel*

The defendant asserts that his conditions of confinement are uncomfortable and have made it more difficult than necessary for him to consult with his counsel to prepare his defense.  In so arguing, the defendant disputes the government's assertion that any such issues –the so called "BOP Situation" -- have been resolved.[3]  The need to assist in defending against the extradition proceeding itself is not a special circumstance.  *Koskotas*, 931 F.2d at 175; *Russell*,

---

[3] The defendant submitted some information on this issue under seal so the Court chooses to characterize the argument generally rather than setting out in detail the specific incidents or complaints recounted in the defendant's submissions.  Further, the Court notes for clarity that BOP is the acronym for the U.S. Bureau of Prisons and its use is misplaced here.  The defendant is in the custody of the U.S. Marshals; the BOP has no involvement with this case.

805 F.2d at 1217.  Neither is the fact that jail is unpleasant.  *Williams*, 611 F.2d at 915.  Accordingly, the Court does not find this issue to constitute a special circumstance.  That being said, this issue may merit further review as time goes on and the Court urges the government to continue to work with the defendant's counsel to address any unresolved issues.

### 6. *Combination of Circumstances*

Finally, the Court finds that all of these factors considered together still do not constitute a special circumstance.  Rather, the Court is satisfied for purposes of the bail motion that Ireland has not unreasonably delayed in bringing charges or requesting the defendant's extradition, that there is a diplomatic need to seek detention, and that there is no basis to believe the extradition proceeding will take an exceptionally long period of time to resolve.  It is true that the defendant's continued detention will create issues of varying degrees of strain and inconvenience for both him and his family, but there is insufficient evidence to suggest it would be to such a degree at to distinguish this case from other extradition cases.

## IV.  CONCLUSION

For the foregoing reasons, the Motion for Release on Bail Pending Extradition Proceedings is DENIED.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  December 10, 2015